# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

MARCIA ANN DUNN                                                    PLAINTIFF


v.                              NO. 3:14-cv-00103 JTR


CAROLYN W. COLVIN, Acting Commissioner                             DEFENDANT
of the Social Security Administration


### MEMORANDUM OPINION AND ORDER


Plaintiff, Marcia Ann Dunn ("Dunn"), has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs (docket entries #11 and #12), and the issues are now joined and ready for disposition.

Dunn maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why.[1] She first maintains that her residual functional capacity was not properly assessed. It is her contention that "[t]he medical evidence, which shows that [she] has a heel spur and carpal tunnel syndrome, both of which affect her ability to do tasks such as stand, walk, and finger and handle

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

objects, does not support the ALJ's findings …" <u>See</u> Pleading 11 at 26.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by "at least some" medical evidence. <u>See</u> <u>Wildman v. Astrue</u>, 596 F.3d 959, 969 (8th Cir. 2010). [quoting <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001)].

The ALJ found at step two of the sequential evaluation process that Dunn's severe impairments include plantar fasciitis and carpal tunnel syndrome. He assessed her residual functional capacity and, in doing so, found that the aforementioned impairments are "controlled and/or stabilized with conservative medical treatment." <u>See</u> Transcript at 17. He nevertheless incorporated the limitations caused by her carpal tunnel syndrome into the assessment of her residual functional capacity. He found that she is capable of performing light work, specifically finding, in part, the following:

> … The claimant retains the ability to lift 20 pounds occasionally and 10 pounds frequently, stand/sit/walk for 6-8 hours in an 8-hour workday, and stand/sit/walk for 1 to 2 hours without interruption. The claimant has no restrictions in climbing, stooping, and crawling, but she would be restricted from continuous reaching, grasping, and fingering. However, she would be able to frequently reach, grasp, and finger. …

<u>See</u> Transcript at 13. At step four, the ALJ found that Dunn is capable of performing her past relevant work as a cashier and therefore denied her applications for disability

insurance benefits and supplemental security income payments.

Substantial evidence on the record as a whole supports the ALJ's assessment of Dunn's residual functional capacity. There is at least some medical evidence to support his finding that her foot impairment can be controlled or stabilized by treatment, and there is at least some medical evidence to support his finding regarding the work-related limitations caused by her carpal tunnel syndrome.

With respect to Dunn's foot impairment, the record reflects that she has experienced heel problems since at least November of 2000 when she presented to the Jonesboro Church Health Center ("Jonesboro Church") for a "check-up for [a] heel spur." See Transcript at 267. The progress note reflects that "heel spur vs. plantar fasciitis" was assessed, see Transcript at 267, and she was given an injection in what appears to have been her left heel.

It appears that Dunn did not seek treatment for her heel problems again until September of 2010 when she presented to Jonesboro Church complaining of, inter alia, pain in the heel of her foot. See Transcript at 273. She reported that it was hard to bear weight on her heel. The progress note reflects that heel pain was assessed, and she was referred to a podiatrist for further evaluation.

Dunn was referred to Dr. Lee Woodruff, D.P.M., ("Woodruff") who saw Dunn in September of 2010 for her complaints of significant pain in her right heel. See Transcript at 406. She reported having stabbing pain that particularly hurt when she first stood up in the morning and reported having "tried taking Tylenol and wearing supportive shoes

with minimal success." See Transcript at 406. She had palpable pain at the plantar aspect of her right heel, and x-rays revealed "significant inferior calcaneal spur, mild posterior spur, and an increased calcaneal inclination angle." See Transcript at 406. Woodruff diagnosed "plantar fasciitis heel spur syndrome of [the right] foot." See Transcript at 406. He prescribed over-the-counter medication, provided Dunn with strapping with a pad, and discussed the possibility of a steroidal injection.

It appears that Dunn did not see Woodruff again until April of 2011 when she presented complaining of severe pain in her right heel. See Transcript at 405. She reported that she had only obtained minimal relief from the anti-inflammatory medication, arch supports, and supportive shoes she had been using. She again had palpable pain at the plantar aspect of her right heel, pain that he observed was consistent with "plantar fasciitis heel spur syndrome." See Transcript at 405. Woodruff and Dunn discussed the need for foot rest, supportive shoes, and ice massages, and he gave her a steroidal injection in her right heel.

Woodruff saw Dunn approximately one month later, and she reported that she was doing much better. See Transcript at 405. She reported no sharp pain, only some soreness, and was "very pleased." See Transcript at 405. She had minimal pain on palpation at the plantar aspect of her right heel and appeared to be "greatly improved." See Transcript at 405. Woodruff and Dunn discussed the chronic nature of plantar fasciitis and the continued need for "supportive shoe gear and posterior stretching exercises." See Transcript at 405. He prescribed over-the-counter medication for the soreness she

-4-

was experiencing.

In October of 2011, Dunn presented to Jonesboro Church for a routine check-up. See Transcript at 271. She reported, inter alia, that her heel pain had been resolved as a result of the steroidal injection.

Dunn did not report any heel problems again until May of 2012 when she presented to Dr. Henry Allen, M.D., ("Allen") complaining of heel pain. See Transcript at 394-395. He did not diagnose her heel problems but encouraged her to return to Woodruff.

Woodruff saw Dunn in June of 2012 when she presented for an evaluation of her right heel pain. See Transcript at 405. She reported that her heel pain had returned and was aggravated when she exercised. She had palpable pain at the plantar aspect of her right heel. He diagnosed "plantar fasciitis heel spur syndrome of [the right] foot." See Transcript at 405. He gave her a steroidal injection in her right heel and recommended an orthotic for her shoes, rest, and over-the-counter medication for her pain.

Allen saw Dunn in August of 2012 and again in February of 2013 for, inter alia, her complaints of foot pain. See Transcript at 413-415, 420-423. He diagnosed a heel spur/calcaneal spur and prescribed meloxicam for her pain. His progress note from the August of 2012 examination indicates that he also encouraged her to exercise.

In April of 2013, Dr. William Hurst, M.D., ("Hurst") completed a medical source statement for Dunn. See Transcript at 448-449. He opined, inter alia, that she could only stand and/or walk continuously for two to three hours. He represented that the principal symptoms/allegations supporting his opinion were her asthma and diabetes mellitus, and

he admitted that he had not seen her in roughly two years when he offered his opinion.

Dunn represented in her disability documents that her hobbies and interests include walking, fishing, and exercising. See Transcript at 181. She testified during the administrative hearing that she cannot stand for very long because of the pain and numbness in her foot. See Transcript at 36-37.

Substantial evidence on the record as a whole supports the ALJ's consideration of Dunn's heel spur pain.[2] He adequately considered the medical evidence and could and did find that the impairment can be controlled or stabilized with treatment. For instance, Woodruff's progress notes for the period from September of 2010 through June of 2012 reflect that Dunn's heel spur pain improved dramatically after she received steroidal injections. In fact, when she presented to Jonesboro Church in October of 2011, she noted that her heel spur pain had been resolved. The ALJ appears to have not given Hurst's opinion any consideration, but the ALJ's failure to do so does not warrant a remand for two reasons.[3] First, Hurst admitted that the principal symptoms/allegations supporting his opinion were Dunn's asthma and diabetes mellitus. There is no evidence his opinion was made on the basis of her foot impairment. Second, he admitted that he had not seen her for roughly two years when he offered his opinion, and there is no

---

[2]

The ALJ characterized Dunn's foot impairment as plantar fasciitis, not a heel spur. His characterization was not improper as there is evidence in the record to support the characterization.

[3]

Assuming Hurst was a treating physician, his opinion may be disregarded if other medical assessments are supported by better or more thorough medical evidence or if he renders inconsistent opinions that undermine the credibility of his opinion. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006).

indication he knew of the improvement she made after receiving the steroidal injections.

The ALJ also considered the non-medical evidence in evaluating the work-related limitations caused by Dunn's heel spur pain. His consideration of that evidence was not extensive, but it was adequate. Her daily activities and largely conservative treatment undermine her assertion of disabling heel pain.

With respect to Dunn's carpal tunnel syndrome, the record reflects that she has experienced problems with her hands and wrists since at least the 1990s. See Transcript at 32. She testified during the administrative hearing that she has had surgery on her left wrist once and surgery on her right wrist twice.

In September of 2009, Dunn presented to Jonesboro Church complaining of, inter alia, carpal tunnel syndrome. See Transcript at 277. She reported that her hands hurt despite having had surgery to reduce the pain. No diagnosis was made at that time, and nothing appears to have been prescribed or recommended for treating her complaint.

It appears that Dunn did not seek medical attention for her carpal tunnel syndrome again until May of 2012 when she saw Allen for, inter alia, pain and numbness in both hands. See Transcript at 394-395. He made no findings and did not offer a diagnosis of her complaint, but he did note she was taking meloxicam for pain.

Hurst addressed Dunn's manipulative limitations in his April of 2013 medical source statement. See Transcript at 448-449. He opined that she could frequently handle and finger but could only occasionally reach. He admitted, though, that the principal symptoms/allegations supporting his opinion were her asthma and diabetes mellitus, and

he admitted that he had not seen her in roughly two years when he offered the opinion.

In October of 2013, Dunn presented to Jonesboro Church complaining of, <u>inter</u> <u>alia</u>, pain in the joints of her hands. <u>See</u> Transcript at 456. No findings were made, and no diagnosis of her complaint was offered. Mobic was prescribed, but it is difficult to know whether the medication was for treating the pain in the joints of her hands.

In Dunn's disability documents, she represented, <u>inter</u> <u>alia</u>, that although she has difficulty gripping and holding onto objects, she is nevertheless able to do activities such as prepare meals, clean dishes, do laundry, sew, and fish. <u>See</u> Transcript at 181-185. She testified during the administrative hearing that she has pain, numbness, and tingling in her hands. <u>See</u> Transcript at 37. She testified that the symptoms prevent her from gripping objects like mops and brooms but do not prevent her from buttoning her clothing and making a fist. <u>See</u> Transcript at 38.

Dunn's carpal tunnel syndrome gives rise to work-related limitations, and the ALJ incorporated those limitations into the assessment of her residual functional capacity. The question is whether the impairment gives rise to greater work-related limitations than he found. Substantial evidence on the record as a whole supports his finding regarding the extent of the limitations caused by her carpal tunnel syndrome. The ALJ adequately considered the medical evidence and could find that it was unremarkable. For instance, even Hurst opined that Dunn was capable of frequent handling and fingering. It is true that he opined she could only occasionally reach, but he did not mention Dunn's carpal tunnel syndrome as a basis for his opinion and admitted that he

had not seen her for roughly two years when he offered his opinion.

The ALJ did not give extension consideration to the non-medical evidence, but his consideration of it was adequate. Her daily activities and use of conservative treatment undermine her assertion that her carpal tunnel syndrome gives rise to greater work-related limitations than the ALJ found.

Dunn offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that she cannot perform her past relevant work as a cashier, work the ALJ found she could perform. She supports her assertion, in part, by maintaining the following:

> … it is likely that Dunn's job does not qualify as past relevant work. 20 C.F.R. 404.1565(a) indicates that to be considered past relevant work, a job must qualify as substantial gainful activity, which in turn is "work activity that is both substantial and gainful." 20 C.F.R. 404.1572(a). Under 20 C.F.R. 404.1574(b)(ii)(B), for years after January 1, 2001, earnings showing substantial gainful activity are based on "[a]n amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998." For 2001, the monthly substantial gainful activity amount is $740; for 2002, it is $780. [Footnote omitted]. Here, Dunn earned $2,379.02 in 2001 from her job as a cashier and $8,180.73 in 2002. Thus, she averaged $198 in earnings per month for 2001 and $682 in earnings per month for 2002, well below the substantial gainful activity amount for these two years. Accordingly, her work as a cashier does not qualify as substantial gainful activity and cannot constitute past relevant work.

See Pleading 11 at 26-27.

Dunn's assertion has no merit. The Court so finds for the following reason set forth

by the Commissioner:

> … during the hearing, the ALJ correctly stated that [Dunn] started working in late 2001 and continued working through 2002 and that [her] earnings for these two years would surpass substantial gainful activity levels (Tr. 29-30). Indeed, the record shows that [she] began working as a cashier in October of November 2001 and stopped working in June or July 2002 (Tr. 137, 154, 161, 172).
>
> While working as a cashier, [Dunn] earned between $7.00 and $7.75 an hour, worked between 35 and 40 hours weekly, and earned $2,379.02 and $8,180.73 in 2001 and 2002, respectively (Tr. 128-129, 137, 154, 161, 172). Thus, for the two or three months in 2001 and the six or seven months in 2002 [she] worked as a cashier, she averaged over $1,000 a month in income, which is well above the substantial gainful activity levels for those years (Tr. 12-18, 128-129, 137, 154, 161, 172).

See Pleading 12 at 7-8.

Dunn also maintains that she is incapable of performing her past relevant work as a cashier because it requires greater work-related abilities than she retains. Specifically, she maintains that the cashier job identified by the ALJ, i.e., cashier II, Dictionary of Occupational Title ("DOT") 211.462-010, requires frequent reaching, fingering, and handling, and she cannot perform those activities.

Dunn has past relevant work as a cashier. A vocational expert testified during the administrative hearing that "[t]he closest match is to [a] gas station cashier job," a job found at DOT 211.462-010. See Transcript at 29-30. The vocational expert testified that a person can perform the requirements of that job if the person can frequently reach,

-10-

grasp, and finger. <u>See</u> Transcript at 43-45.[4] Substantial evidence on the record as a whole supports the ALJ's assessment of Dunn's residual functional capacity, specifically, that she retains sufficient residual functional capacity to frequently reach, grasp, and finger. Accordingly, the ALJ could and did find that Dunn retains sufficient residual functional capacity to perform the job requirements of her past relevant work as a cashier. Thus, Dunn's assertion has no merit.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that a "reasonable mind would accept as adequate to support the Commissioner's conclusion" in this case. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

---

[4]

The ALJ could and did find that the vocational expert's testimony is in agreement with the DOT. <u>See</u> Transcript at 18.

IT IS SO ORDERED this 22nd day of June, 2015.


_____
UNITED STATES MAGISTRATE JUDGE